UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SWEETWATER MARINE, LLC <br> f/k/a ASHTON MARINE, LLC <br> <br>    PLAINTIFF <br> <br> v. <br> <br> AMERICAN COMMERCIAL <br> BARGE LINE, LLC <br> <br> **Serve:** Cogency Global, Inc. <br>       9221 Crawfordsville Rd. <br>       Indianapolis, IN 46234 <br> <br> **Corporate Address:** 1701 E. Market St. <br>                        Jeffersonville, IN 47130 <br> <br> and <br> <br> COMMERCIAL BARGE LINE COMPANY <br> <br> **Serve:** CT Corporation System <br>       36 S. Pennsylvania St., Ste. 700 <br>       Indianapolis, IN 46204 <br> <br> **Corporate Address:** 1701 E. Market St. <br>                        Jeffersonville, IN 47130 <br> <br> and <br> <br> OLD JB, LLC f/k/a JEFFBOAT, LLC <br> <br> **Serve:** Cogency Global, Inc. <br>       9221 Crawfordsville Rd. <br>       Indianapolis, IN 46234 <br> <br> **Corporate Address:** 1701 E. Market St. <br>                        Jeffersonville, IN 47130 <br> <br>    DEFENDANTS | Cause No. 4:23-cv-00001 <br><br> Demand For Jury Trial |

**COMPLAINT**

Plaintiff, Sweetwater Marine, LLC f/k/a Ashton Marine, LLC, by counsel and for its Complaint against Defendants, Old JB LLC, American Commercial Barge Line LLC, and Commercial Barge Line Company, hereby states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Sweetwater Marine, LLC f/k/a Ashton Marine, LLC ("Ashton"), is a Michigan limited liability company with its principal office located at 10 Clinton Avenue, Apt. D, Grand Haven, Michigan 49417.

2. Defendant, American Commercial Barge Line, LLC ("ACBL") is a Delaware limited liability company with its principal office located at 1701 East Market Street, Jeffersonville, Indiana 47130.

3. Defendant, Commercial Barge Line Company ("CBLC"), is a Delaware corporation with its principal place of business located at 1701 East Market Street, Jeffersonville, Indiana 47130. CBLC is, upon information and belief, the sole member of ACBL.

4. Defendant, Old JB LLC f/k/a Jeffboat LLC ("Jeffboat") is a Delaware limited liability company with its principal office located at 1701 East Market Street, Jeffersonville, Indiana 47130. CBLC is, upon information and belief, the sole member of Old JB as well.

5. This Court has subject matter jurisdiction over the claims asserted in this action for monetary relief under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties to the action and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. The Court likewise possesses subject matter jurisdiction over the claims asserted in this action because this action is brought pursuant to written contract, the forum selection provision

of which selects the U.S. District Court for the Southern District of Indiana as the venue for such action.

7. The Court has personal jurisdiction over Defendants because they availed themselves of the benefit of transacting business in Jeffersonville, Indiana vis-à-vis their principal offices there and vis-à-vis the contract that is at issue in this action, among other actions.

8. Venue is proper in this Court under 28 U.S.C. § 1391, as it is the judicial district in which a substantial par of the events or omissions giving rise to Ashton's claims occurred/ Likewise, pursuant to the contract at issue in this action, this Court is the venue selected by the parties to resolve disputes relating thereto.

## FACTUAL ALLEGATIONS

9. Ashton is a marine transportation company based in North Muskegon, Michigan that specializes in transporting bulk cargo, dry cargo, and project cargo around the Great Lakes region of the United States. Ashton transports raw materials for manufacturing and agriculture, dry cargo in covered hopper barges, and all manner of other items for numerous customers.

10. Necessary to Ashton's ability to engage in its business are barges, which Ashton uses to move goods for its customers.

11. On or around May 30, 2017, Ashton and Old JB entered into a contract (the "Barge Contract"), whereunder Old JB agreed to construct two barges (each one a "Barge," and collectively, the "Barges") in accordance with certain specifications described therein. (*See* Barge Contract, attached hereto as **Exhibit 1**.)

12. In exchange for Old JB's agreement to construct and deliver the Barges, Ashton agreed to pay Old JB $1,219,099.00 per Barge. However, after consummating the Barge Contract, Old JB's failures quickly began to manifest themselves.

13. For example, while the Barge Contract originally called for International Unrestricted barges (*i.e.*, barges that qualify for travel on rivers, lakes, and the open ocean), Old JB was unable to deliver on this, and requested a contract amendment to change the vessel type to "Great Lakes ABS" barges, which only qualify for river and lake travel. This change is memorialized in the parties' February 15, 2018 contractual amendment (the "Barge Contract Amendment"). The Barge Contract Amendment lowered the price for the Barges to $820,000.00 each.

14. Further, pursuant to change order (the "Change Order"), the parties agreed at Ashton's request to the application of a PRP product to the Barges rather than ordinary Sherwin-Williams paint. The PRP product is designed to provide additional protections and help prevent rusting, erosion, and other issues.

15. After consummation of the Barge Contract, and Old JB's initiation of the construction of the Barges at the Jeffboat Shipyard in Jeffersonville, Indiana, Old JB retained the subcontracting services of McGinnis, Inc. ("McGinnis"), a process in which Ashton played no part.

16. Old JB tasked McGinnis with, *inter alia*, applying the PRP product to the Barges, a task which, again, Ashton played no part in assigning. Pursuant to the Change Order, Old JB warranted that a PRP representative would be present at the facilities during application of the PRP product in order to ensure that the coating was applied in accordance with PRP's standards, which include, *inter alia*, a minimum of 2.5mm of thickness when dry.

17. Unfortunately, while a PRP representative was allegedly on-site during McGinnis's application of the PRP product to the *first* Barge, Old JB and McGinnis proceeded to coat the

second Barge without a PRP representative present, and in violation of the Barge Contract, the Change Order, and their relevant warranties and promises and representations to Ashton.

18. Further, Old JB and McGinnis did not follow the PRP standards vis-à-vis their failure to apply the PRP product to its required dry thickness of a minimum of 2.5mm across the entire surface area of the two Barges. In particular, the first Barge that was painted, *i.e.*, while the PRP representative was at least on-site, was done better, although still not to standard; the second Barge was even worse.

19. Old JB and McGinnis failed to do so despite the specific and express directions from the PRP representative calling for such thickness. Indeed, McGinnis has already acknowledged that it failed to do so, something that Ashton was able to confirm via gauging after the corrosion on the Barges manifested itself (measurements seem to indicate that Old JB and McGinnis had no strategy whatsoever regarding uniformity, as different sections measure at 1mm, 2.2mm, and up to 3mm). Further, there were massive areas on the Barges where ***no paint whatsoever was applied***. Specifically, it appears that the covers were set on stands and were never shifted in order to paint the areas where the stands prevented paint to adhere; Old JB has claimed that it did in fact make such shifts, but this would only highlight its failures even more.

20. Under the Barge covers, Old JB and McGinnis left almost as many areas ***unpainted*** as those that were painted. It was not until much later that Ashton learned of McGinnis and Old JB's failures with respect to the PRP product's application or the fact that no PRP representative was present for such application to at least the second Barge. The negligent manner in which Old JB and McGinnis applied the PRP product has caused significant damage to Ashton.

21. Further, under the Barge Contract, the Barges were intended to be constructed over the course of a few days, but it ended up taking Old JB nearly a year to complete the project. All

the while, the Barges and their component parts, *i.e.*, raw metal, sat outside, unpainted and becoming much more susceptible to rust. When the Barges were ultimately delivered the Ashton, though, they had the covers on them and so Ashton had no way of knowing the burgeoning rust issues that the Barges would soon fall victim to.

22. After delivery of the Barges, Ashton began seeing the poor workmanship quality of Old JB's work. For example, the cover holes on the Barges, as initially constructed, did not line up properly, and rather than fixing the problem professionally, Old JB apparently just manually torched the side of the Barges to make the holes big enough to line up with each other. As another example, after delivery of the Barges Ashton discovered broken index pins—the quality of the welding of these pins was very poor and the pins do not even line up with the respective holes on the Barges. As a third example, after delivery the top cover latches on the Barges began breaking off, and Ashton discovered that the bolts underneath were stripped. Moreover, the top cover latch pins do not align with their respective holes either. Likewise, the Barges' side cover clamps broke very easily, and Ashton noticed that as the covers moved, the stainless steel part would bend or break, thereby causing issues with clamping down.

23. Ashton has also experienced numerous additional issues with rubber gaskets falling out on the Barges.

24. It is no secret that the Barges built for Ashton under the Barge Contract were some of the last—if not the very last—newbuilds at the Jeffboat Shipyard prior to its closing, leading to the inevitable conclusion that the company's desire to complete its final tasks and shut the yard outweighed its desire for attention to detail and the proper construction of the Barges. Such inattention to detail caused the problems outlined above, and likely caused other issues that have yet to reveal themselves.

25. Due to the numerous problems outlined above, as well as the incredibly poor job done with respect to applying the PRP product to the Barges, Ashton reached out to Old JB and ACBL to discuss solutions to the problem in late January of 2019. In connection with these discussions, the Barges were taken to the Chicago Dry Docks on Lake Michigan for warranty work in accordance with the Barge Contract.

26. The Barges were at the Chicago Dry Docks from around August of 2019 – November of 2019. The key issued to be addressed during this time including, but were not limited to, paint issues, top cover latches, side cover latches, and gaskets.

27. Old JB and ACBL *did* address the gasket issue, and they swapped out the top cover latches with a chain-binder system. However, when Old JB and ACBL installed the chain-binder system, it did not do anything with respect to the holes where the pins (from the previous latch system) used to go through. Instead, they just left the holes there, which serve no purpose and make the Barges look much shabbier. Likewise, with respect to the top and side cover latches, Old JB and ACBL did not prep the surface areas where they were working and, in an unworkmanlike manner, put a patchwork layer of Sherwin Williams product on the Barges. Old JB and ACBL did not address the broken index pins either, and left torched-out holes for the pins on the top of the coaming. Further, while torching and welding work was being done on the Barges, Old JB and ACBL ruined certain areas where the PRP product had been applied due to "splatter" from the torching and welding.

28. Around this time, Mike Draughn of ACBL stated that Old JB and McGinnis had completely missed spots when painting the Barges with the PRP product. Regarding the paint work, Old JB and ACBL merely rolled a Sherwin Williams product over some spots on the Barges, which (a) is not what Ashton bargained or paid for under the Barge Contract; (b) made the Barges

look like they had been pieced together in a haphazard, subpar manner; and (c) was never intended to be a permanent fix. Also, Sherwin Williams refused to warranty to spot work done at the Chicago Dry Docks, further evidencing the fact that this was not intended to be permanent, but rather, was an acknowledgment by Old JB and ACBL that the original PRP job had not been done correctly, and a hold-over was necessary while the parties determined a permanent solution.

29. By emails in December of 2019, Mike Poindexter of ACBL assured Ashton that the Barges' issues had not fallen off the radar and that Mike Draughn was working to get estimates for fixing the Barges' problems. Likewise, in 2020, Mike Draughn sent text messages to Ashton in response to Ashton's requests for updates on the ongoing issues in which he stated that he had put a package together with pricing for paint and two locations to perform the requisite repairs, which he had allegedly turned over to Mike Poindexter. Mike Draughn assured Ashton that he would follow up but that he assumed Mike Poindexter had been in contact with Ashton by that point. To be clear, though, Mike Poindexter had *not*.

30. Then, by numerous pieces of correspondence in 2020-2021, Ashton repeatedly sought updates and remedies to the myriad problems with the Barges, and each time it was rebuffed by Old JB and ACBL, with the latter parties eventually changing their tune completely and essentially denying that Ashton was entitled to such repairs. This was after stringing Ashton along for a prolonged period of time by ensuring that they would handle the issues. This was bad faith.

31. Now, due to Old JB and ACBL's failure and refusal to remedy the gigantic problems with the Barges (after unequivocally leading Ashton on and inducing it to believe that such issues would be handled), Ashton brings the instant suit for damages.

## COUNT I: BREACH OF CONTRACT

32. Ashton realleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

33. Ashton and Old JB entered into a valid and enforceable agreement vis-à-vis the Barge Contract.

34. Old JB is owned by ACBL and/or CBLC and/or a legally related entity.

35. Old JB materially breached the Barge Contract through, *inter alia*, the following:

   a. Failing to construct the Barges in a timely manner;

   b. Permitting Barge materials to weather outside for an unreasonable period of time, thereby drastically shortening the Barges' lifespans;

   c. Failing to apply the PRP product in accordance with the requirements thereof;

   d. Failing to construct the Barges, including the top and side latch covers, chain binder system, index pins, gaskets, holes not lining up, failing to prep Barge surfaces for work, and more;

   e. Constructing Barges that did not live up to the Barge Contract's requirements; and

   f. Failing to even cover the Barges entirely in the PRP product.

36. As a direct and proximate result of Old JB's numerous material breaches of the Barge Contract, Ashton has suffered and continues to suffer damages in an amount in excess of this Court's jurisdictional threshold, and it is entitled to judgment for same.

## COUNT II: BREACH OF EXPRESS WARRANTIES

37. Ashton realleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

38. Old JB, through the specifications included in the Barge Contract and its own, affirmative statements to Ashton, provided Ashton with affirmations of fact and promises that created express warranties that the Barges:

    a. Would conform to the requirements of the Barge Contract, the specifications contained therein, and applicable drawings of the vessels themselves;

    b. Would be free from defects of design;

    c. Would be constructed using good workmanship and quality in accordance with industry standards for work of like nature;

    d. Would include only materials, parts, and equipment that are new; and

    e. Would be free of defects in materials or workmanship.

39. Ashton, in fact, relied on the affirmations of fact and promises made by Old JB with respect to the Barges.

40. The Barges were not, in fact, delivered free of defects or damages, and they were not, in fact, suitable for their intended purposes as warranted by Old JB. In fact, the Barges were shoddily constructed, as discussed herein, and the PRP product was not applied properly.

41. Consequently, Old JB breached its express warranties to Ashton.

42. As a direct and proximate result of Old JB's numerous, material failures and breaches of its express warranties, Ashton has suffered and continues to suffer damages in an amount in excess of the jurisdictional limit of this Court.

## COUNT III: FRAUD

43. Ashton realleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

44. By virtue of the Barge Contract and their pecuniary interest therein, Old JB, ACBL, and CBLC owed a duty to Ashton to exercise reasonable care in their communication of information and supply of services in connection therewith.

45. Old JB, ACBL, and CBLC knowingly supplied false information for the guidance of Ashton in connection with the parties' business relationship through, *inter alia*, the following:

    a. Instructing Ashton that all issues with the Barges would be resolved in later 2019 while the Barges were at the Chicago Dry Docks;

    b. Instructing Ashton that, while at the Chicago Dry Docks, they would use a Sherwin Williams product to coat certain areas of the Barges, but that such painting would be a temporary fix, not a permanent solution; and

    c. Continuously instructing Ashton in 2019-2021 that they intended to remedy the ongoing issues with the Barges.

46. Old JB, ACBL, and CBLC made these statements and acted in this manner with the knowledge that Ashton would rely on their professional services, opinions, and guidance even though Old JB, ACBL, and CBLC knew such statements and actions were false or acted recklessly with respect to their falsity.

47. Ashton did, in fact, rely on the statements of Old JB, ACBL, and CBLC.

48. As a direct and proximate result of these numerous, material misrepresentations made by Old JB, ACBL, and CBLC to Ashton and Ashton's reliance thereon, Ashton has suffered and continues to suffer damages in an amount in excess of the jurisdictional limit of this Court, and Old JB, ACBL, and CBLC have gained a monetary advantage at Ashton's expense.

## COUNT IV: CONSTRUCTIVE FRAUD

49. Ashton realleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

50. By virtue of the Barge Contract and their pecuniary interest therein, Old JB, ACBL, and CBLC owed a duty to Ashton to exercise reasonable care in their communication of information and supply of services in connection therewith.

51. Old JB, ACBL, and CBLC knowingly supplied false information for the guidance of Ashton in connection with the parties' business relationship through, *inter alia*, the following:

   a. Instructing Ashton that all issues with the Barges would be resolved in later 2019 while the Barges were at the Chicago Dry Docks;

   b. Instructing Ashton that, while at the Chicago Dry Docks, they would use a Sherwin Williams product to coat certain areas of the Barges, but that such painting would be a temporary fix, not a permanent solution; and

   c. Continuously instructing Ashton in 2019-2021 that they intended to remedy the ongoing issues with the Barges.

52. Old JB, ACBL, and CBLC made these statements and acted in this manner with the knowledge that Ashton would rely on their professional services, opinions, and guidance.

53. Ashton did, in fact, rely on the statements of Old JB, ACBL, and CBLC.

54. As a direct and proximate result of these numerous, material misrepresentations made by Old JB, ACBL, and CBLC to Ashton and Ashton's reliance thereon, Ashton has suffered and continues to suffer damages in an amount in excess of the jurisdictional limit of this Court, and Old JB, ACBL, and CBLC have gained a monetary advantage at Ashton's expense.

## COUNT V: NEGLIGENT MISREPRESENTATION

55. Ashton realleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

56. By virtue of the Barge Contract and their pecuniary interest therein, Old JB, ACBL, and CBLC owed a duty to Ashton to exercise reasonable care in their communication of information and supply of services in connection therewith.

57. Old JB, ACBL, and CBLC negligently supplied false information for the guidance of Ashton in connection with the parties' business relationship through, *inter alia*, the following:

   a. Instructing Ashton that all issues with the Barges would be resolved in later 2019 while the Barges were at the Chicago Dry Docks;

   b. Instructing Ashton that, while at the Chicago Dry Docks, they would use a Sherwin Williams product to coat certain areas of the Barges, but that such painting would be a temporary fix, not a permanent solution; and

   c. Continuously instructing Ashton in 2019-2021 that they intended to remedy the ongoing issues with the Barges.

58. Old JB, ACBL, and CBLC made these statements and acted in this manner with the knowledge that Ashton would rely on their professional services, opinions, and guidance, which Ashton did, and reasonably so.

59. Old JB, ACBL, and CBLC did *not* resolve all of the Barges' issues at the Chicago Dry Docks; they did not use the Sherwin Williams paint as a temporary fix; and they did not remedy the ongoing issues.

60. As a direct and proximate result of these numerous, material misrepresentations made by Old JB, ACBL, and CBLC to Ashton, Ashton has suffered and continues to suffer damages in an amount in excess of the jurisdictional limit of this Court.

## **COUNT VI: UNJUST ENRICHMENT**

61. Ashton realleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

62. Old JB, ACBL, and CBLC have benefitted and been unjustly enriched to the detriment of Ashton in that Old JB, ACBL, and CBLC received the benefit of numerous payments from Ashton under the terms of the Barge Contract without having to provide any product or service of comparable value.

63. It would be inequitable to permit Old JB, ACBL, and CBLC to retain the benefits they received as a result of such payments by Ashton, because Old JB, ACBL, and CBLC misled Ashton into making such payments and Ashton did not receive the complete Barges free of defects, or any other product or service of comparable value from Old JB, ACBL, or CBLC.

64. As a direct and proximate result of the inequitable actions of Old JB, ACBL, and CBLC, Ashton has suffered and continues to suffer damages in an amount in excess of the jurisdictional limit of this Court.

**WHEREFORE**, Ashton respectfully requests that this Court enter judgment in its favor and against all Defendants so named herein for the claims asserted in this Complaint. Ashton further requests that this Court:

A. A trial by jury on all issues so triable;

B. Judgment against all Defendants so named herein for all claims alleged herein in an amount to be determined at trial;

  C. Award Ashton pre- and post-judgment interest in the amounts allowed by law;

  D. An award of punitive damages in an amount to be determined at trial;

  E. An award of attorneys' fees, expert fees, and court costs; and

  F. Any and all additional relief to which Ashton may be entitled.

Respectfully submitted,

*/s/ Kevin A. Imhof*
Mark Hurst (*pro hac vice* application forthcoming)
Andrew Hagerman (*pro hac vice* application forthcoming)
Kevin Imhof (Indiana Attorney No. 36433-22)
Stoll Keenon Ogden PLLC
500 W. Jefferson Street, Suite 2000
Louisville, KY 40202
Tel: (502) 333-6000
mark.hurst@skofirm.com
andrew.hagerman@skofirm.com
kevin.imhof@skofirm.com
*Counsel for Ashton*