**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| SWEETWATER MARINE, LLC f/k/a ASHTON MARINE, LLC Michigan Limited Liability Company,<br><br>              Plaintiff,<br><br>       v.<br><br>AMERICAN COMMERCIAL BARGE LINE, LLC Delaware Limited Liability Company, OLD JB LLC f/k/a JEFFBOAT, LLC Delaware Limited Liability Company,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)        Case No. 4:23-cv-00001-TWP-KMB |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT**

This matter is before the Court on Defendants' Motion for Partial Dismissal of Amended Complaint, filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (Filing No. 16).[1] Plaintiff Sweetwater Marine, LLC f/k/a Ashton Marine, LLC ("Ashton") initiated this lawsuit against Defendants American Commercial Barge Line LLC ("ACBL") and Old JB LLC f/k/a Jeffboat LLC ("Jeffboat") (collectively, "Defendants") alleging six claims, including breach of contract, breach of warranties, fraud, constructive fraud, negligent misrepresentation, and unjust enrichment; based on Defendants' failure to satisfactorily construct two steel bulk cargo barges ("Barge" or collectively, "Barges") pursuant to the parties amended contract. (Filing No. 1-1; Filing No. 16-2). Defendants seek dismissal of all claims except for Ashton's breach of express warranty claim against Jeffboat (Count II) (Filing No. 16).  For the reasons explained below,

---

[1] Jeffboat and ACBL are wholly owned subsidiaries of Commercial Barge Line Holdings LLC ("CBLH") (Filing No. 17; Filing No. 18) and CBLH is a wholly owned subsidiary of American Commercial Barge Line Holding Corp., (Filing No. 17).

Defendants' partial motion to dismiss is **granted in part and denied in part.**  Counts III, IV, and V of Ashton's Amended Complaint are dismissed as to both Defendants and Count VI is dismissed as to only Jeffboat.

## I.        FACTUAL BACKGROUND

Because the Defendants moved for partial dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### A.   The Barge Contract

On May 30, 2017, Ashton and Jeffboat entered into Construction Contract No. 9271 (the "Barge Contract") in which Jeffboat promised to construct two Barges for Ashton's marine transportation business, and Ashton promised to pay $1,219,099.00 per Barge to Jeffboat (Filing No. 8 at ¶¶ 10–11).  Under the Barge Contract, the parties were allowed to alter the specifications, delivery date, and contract price and were bound by a "Warranty and Limitation of Liability" clause (Filing No. 1-1).  Article X—Completion and Delivery—of the Barge Contract provides that "[t]he Vessels shall be delivered to [Ashton]…with an estimated Delivery Date on or before August 15, 2017." *Id*. at 6.  As relevant here, Article III—Contract Price—of the Barge Contract provides that the price "for each Vessel will be adjusted by reason of: (1) Change Orders pursuant to Article V hereof…." *Id*. at 2.  Lastly, Article XI—Warranty and Limitation of Liability—of the Barge Contract provides for a twelve (12) months warranty period following Delivery of the Barges, whereby,

> [Jeffboat] warrants to [Ashton] that each Vessel to be constructed under this Contract shall at the time of Delivery:
> (1) Conform to the requirements of the Contract, the Specifications and Drawing;
> (2) Be free from defects of design, to the extent the design was prepared by [Jeffboat];

(3) Be constructed using good workmanship and quality in accordance with industry standards for work of like nature;

(4) Include only materials, parts, and equipment that are new; and

(5) Be free of any liens, claims, encumbrances

[Jeffboat] warrants each Vessel from defects in materials or workmanship in the Vessel under normal conditions of use and service, other than those defects which are due to normal wear and tear, accident or damage due to misuse or neglect, or [Ashton's] failure to provide proper maintenance, for a period of twelve (12) months after Delivery of the Vessel. Such warranted defects shall be corrected or the defective parts shall be replaced by [Jeffboat] at [Jeffboat's] expense, at a place mutually agreed to by [Ashton] and [Jeffboat]. If the parties cannot agree upon an appropriate place for the repairs to be made, [Ashton] may have such repairs or replacements made at a location of its choosing, and it is expressly understood by [Ashton] that [Jeffboat] will be responsible only for the retail costs (without overtime) which [Jeffboat] would have charged had [Jeffboat] done the repair or replacement. It is also understood and agreed that the limited warranty hereunder shall be rendered null and void as to the Vessel if it has been modified by [Ashton] or a third party or the Vessel travels or is moved outside the continuous, navigable waterways of the United States.

For any and all warranty work completed by a vendor at a location other than [Jeffboat's] shipyard, [Ashton] is solely responsible for all associated transportation costs or cleaning and [Jeffboat] has the right to inspect and approve of the agreed upon vendor, location and the work completed.

Notwithstanding any other provision herein, [Jeffboat] shall not be required to guarantee the chemical make-up or performance level of any coating. It shall be the sole responsibility of [Ashton] to select a coating of its choosing in accordance with [Jeffboat's] requirements. [Jeffboat] warrants that it will apply the coating selected by [Ashton] in accordance with the manufacturer's data sheet.

[Ashton] shall notify [Jeffboat] in writing during the Warranty Period of any alleged defect found in the Vessel. Upon such notification, [Jeffboat] shall have the right, at its own expense, to make an investigation of the reported alleged defect before corrective work is undertaken.

All warranties on equipment obtained from vendors by [Jeffboat] shall pass through to [Ashton].

**THE WARRANTY IN THIS ARTICLE XI SHALL BE [ASHTON'S] SOLE REMEDY FOR CLAIMED DEFECTS IN MATERIAL OR WORKMANSHIP AND [JEFFBOAT], ITS PRINCIPALS, AGENTS, EMPLOYEES AND/OR SUBCONTRACTORS SHALL IN NO EVENT BE LIABLE TO [ASHTON] FOR ANY CLAIMS FOR LOSS OR DAMAGE FOR ANY REASON WHATSOEVER, INCLUDING FOR BREACH OF WARRANTY, OR FOR NEGLIGENCE OF ANY KIND OR STRICT**

**LIABILITY IN TORT, FOR ANY INCIDENTAL, CONTINGENT, SPECIAL, CONSEQUENTIAL OR COMMERCIAL DAMAGES OF [ASHTON], INCLUDING LOSS OF USE AND/OR OF PROFITS.... FROM WHATEVER CAUSE, WHETHER ARISING FROM NEGLIGENCE OR BREACH OF THIS CONTRACT.**

**THE LIMITED EXPRESS WARRANTY HEREUNDER HAS BEEN BARGAINED FOR AND IS THE SOLE WARRANTY PROVIDED TO [ASHTON] BY [JEFFBOAT]. [JEFFBOAT] SPECIFICALLY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY AND ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE.**

**WARRANTY REPAIRS AND REPLACEMENTS DO NOT EXTEND THE WARRANTY PERIOD.**

(Filing No. 1-1 at 6-7) (emphasis in original).

**B.    The Change Order[2]**

Jeffboat was unable to deliver on certain contractual obligations and the parties amended the Barge Contract (the "Change Order"). In particular, Jeffboat was allowed to change the vessel type from 'International Unrestricted barges' to 'Great Lakes ABS' barges (Filing No. 8 at ¶ 12; Filing No. 16-2 at 2-3).  The exterior coating of both Barges was changed from "Black and Grey Sherwin Williams Seaguard 6000 epoxy" to "Black/Grey PRP metal treatment."  (Filing No. 16-2 at 2, 3.)  This "lowered the price for the Barges to $820,000.00."  (Filing No. 8 at ¶ 12.)  Jeffboat did not guarantee the "chemical make-up or performance of any coating" and they were "not responsible for warranty of PRP metal treatment."  (Filing No. 16-2 at 3.)  But Jeffboat did warrant "that a PRP representative would be present at the facilities during application of the PRP product…."  (Filing No. 8 at ¶ 15.)  Soon after, Jeffboat retained a subcontractor, McGinnis, Inc.

---

[2] The Court cannot consider matters outside the pleadings without converting the Defendants' Motion for Partial Dismissal into one for summary judgment unless those matters are (1) referenced in the Complaint and (2) are central to the Plaintiff's claim (Filing No. 16-1 at 4, fn. 2).  Here, considering that both conditions are met, and Ashton has not addressed this argument in its response, the Court will consider the Change Order document without need to convert the Motion into one for summary judgment.  *See Hutcherson v. Krispy Kreme Doughnut Corp.*, 803 F. Supp. 2d 952, 956 (S.D. Ind. 2011) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

("McGinnis"), to perform the work. *Id*. ¶ 14. While a "PRP representative was allegedly on-site during McGinnis's application of the PRP product to the first Barge, [Jeffboat] and McGinnis proceeded to coat the second Barge without a PRP representative present…." *Id*. at ¶ 16 (emphasis omitted).

**C.    Ashton's Post Delivery Concerns**

Although "the Barges were intended to be constructed over the course of a few days, [] it ended up taking [Jeffboat] nearly a year to complete the project." *Id*. at ¶ 20. Sometime after delivery, Ashton learned that "the Barges and their component parts, *i.e.*, raw metal, sat outside, unpainted" making them "much more susceptible to rust." *Id*. Upon delivery, the Barges " had [] covers on them [] so Ashton had no way of knowing the burgeoning rust issues that the Barges would soon fall victim to." *Id*. Ashton also (1) noticed that "the cover holes on the Barges… did not line up properly"; (2) "discovered broken index pins"; (3) noticed the "top cover latches on the Barges began breaking off," and they did not "align with their respective holes"; (4) noticed "the bolts underneath were stripped"; and (5) noticed "numerous [] issues with rubber gaskets falling out on the Barges." *Id*. at ¶¶ 21-22.

During the parties' contractual dispute, Jeffboat closed and "the former Jeffboat employees dealing with Ashton became employees of ACBL acting as Jeffboat's agents to fulfill Jeffboat's obligations under the parties' agreements…." (Filing No. 16-1 at 15.) Ashton was in communication with Mike Draughn ("Mr. Draughn") and Mike Poindexter ("Mr. Poindexter") of ACBL. (Filing No. 8 at ¶¶ 27-28.) While Defendants addressed certain issues, they failed to address others,

> [Jeffboat] and ACBL *did* address the gasket issue, and they swapped out the top cover latches with a chain-binder system. However, when [Jeffboat] and ACBL installed the chain-binder system, it did not do anything with respect to the holes where the pins (from the previous latch system) used to go through. Instead, they just left the holes there, which serve no purpose and make the Barges look much

shabbier. Likewise, with respect to the top and side cover latches, [Jeffboat] and ACBL did not prep the surface areas where they were working and, in an unworkmanlike manner, put a patchwork layer of Sherwin Williams product on the Barges. [Jeffboat] and ACBL did not address the broken index pins either, and left torched-out holes for the pins on the top of the coaming. Further, while torching and welding work was being done on the Barges, [Jeffboat] and ACBL ruined certain areas where the PRP product had been applied due to "splatter" from the torching and welding.

*Id.* at ¶ 26.

Mr. Poindexter

assured Ashton that the Barges' issues had not fallen off the radar and that [Mr.] Draughn was working to get estimates for fixing the Barges' problems. Likewise, in 2020, [Mr.] Draughn sent text messages to Ashton in response to Ashton's requests for updates on the ongoing issues in which he stated that he had put a package together with pricing for paint and two locations to perform the requisite repairs, which he had allegedly turned over to [Mr.] Poindexter. [Mr.] Draughn assured Ashton that he would follow up but that he assumed [Mr.] Poindexter had been in contact with Ashton by that point.

*Id.* at ¶ 28.

Eventually Defendants "chang[ed] their tune completely and essentially denying that Ashton was entitled to such repairs." *Id.* at ¶ 29.

**D.     This Lawsuit**

On January 6, 2023, Ashton initiated this action and a few days later, on January 13, 2023, filed an Amended Complaint against the Defendants alleging the following claims against both Defendants: Count I: breach of contract; Count II: breach of express warranties; Count III: fraud; Count IV: constructive fraud; Count V: negligent misrepresentation; and Count VI: unjust enrichment (Filing No. 8 at 9-15). In their Motion to Dismiss, Defendants challenge every claim except Ashton's breach of express warranty claim against Jeffboat (Count II).

## II.     MOTION TO DISMISS STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the

defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff.  *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).  However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

## III.   DISCUSSION

Defendants argue that Ashton's breach of contract, fraud, constructive fraud, and unjust enrichment claims are duplicative of its breach of express warranty claim and, as such, they should be dismissed or, alternatively, denied as improperly pled.  Defendants also contend that Ashton's negligent misrepresentation claim fails as well because Defendants do not fall within the narrow class of persons covered by the tort.

Although the Court must look to Indiana law to resolve Ashton's claims on the merits, whether Ashton properly states a claim for relief is a question of federal law.  *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) ("[I]t is rudimentary that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.").  The Court addresses the parties' arguments below.

A.    **Ashton's Claims Against ACBL**

As a preliminary matter, Defendants argue that Ashton's claims against ACBL must fail because ACBL is not a party to the Barge Contract or Change Order, and that "[b]y extension, ACBL is not subject to Ashton's additional causes of action grounded in alleged false or negligent [mis]representation."  (Filing No. 16-1 at 15-16.)

The court recognizes that there may be situations in which it would be appropriate to pierce the corporate veil and impose liability on a corporation for the acts of an affiliated corporation, under such theories as "alter ego" or "instrumentality." *See* Phillip I. Blumberg, *The Law of Corporate Groups: Substantive Law*, § 8.03, at 161 (1987) ("[C]ourts have frequently imposed liability on one subsidiary for the torts of a sister subsidiary.") (citing cases); *see also, Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940 (7th Cir. 1999) (recognizing that under certain circumstances a creditor may pierce the veil of one corporation "to sue a parent or other affiliate.").  But, to establish that such a remedy would be appropriate, a plaintiff must show that one of the corporations was a sham and that both corporations were under common control.  *See Gaskins v. Vencor, Inc.*, 2001 WL 849481, at *2 (S.D. Ind. June 1, 2001) *(citing Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999)) ("Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice.").  However, Ashton has not advanced any allegations to support this position.  Considering that Ashton concedes that ACBL was not a party to the Barge Contract and Change Order, the Court fails to see how Ashton could plausibly state a claim against ACBL under either Counts I or II of the Amended Complaint (Filing No. 21 at 23-24).  The Court will address below whether Ashton has stated plausible claims against both Defendants under Counts III-VI of the Amended Complaint.  *Id.*

**B.**     <u>**Breach of Contract Claim (Count I)**</u>

Jeffboat contends that Ashton's breach of contract claim is duplicative of its breach of express warranty claim and, as such, should be dismissed (<u>Filing No. 23 at 2</u>).

Indiana has long recognized the co-existence of contract and warranty claims. "Although closely related, the two actions are not identical." *Martin v. Thor Motor Coach Inc.*, 602 F.Supp.3d 1087, 1094 (N.D. Ind. 2022). "Yet, the court in *Zawistoski* recognized that when a plaintiff is seeking relief through both actions based on the same contractual provisions […] they are the same." *Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1024 (N.D. Ind. 2020) (citing *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind. Ct. App. 2000)). However, at this juncture, it is unnecessary to force the election of one remedy over another or "distinguish whether [Ashton's] claims arise from a breach of contract or breach of warranty theory because… under either claim [Ashton's] damages are limited to those prescribed in Indiana Code § 26-1-2-714(1) or (2) for accepted goods." *Iron Dynamics v. Alstom Power, Inc.*, 2008 WL 2078621, at *3, fn. 4 (N.D. Ind. May, 15, 2008); *see e.g. Fink v. DeClassis*, 745 F.Supp. 509, 515 (N.D. Ill. 1990) (find that the claim for breach of warranty was not redundant of claim for breach of contract, even though claims sought essentially the same relief and plaintiff could not obtain duplicative recovery, because plaintiff was entitled to assert alternative theories and could not be compelled to elect one remedy over another in the absence of prejudice to defendant).

Jeffboat has not alleged prejudice and the cases relied upon by Jeffboat involved adjudication of summary judgment motions filed much later in the lawsuits and/or concerned claims which may prove factually distinct down the road. *See Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 359 (N.D. Ind. 2021); *Smith*, 468 F. Supp. 3d at 1024; *Zawistoski*, 727 N.E.2d at 792. Regardless, Ashton may not obtain duplicative recovery for breach of warranty and breach

of contract claims that are based on the same set of facts and contractual provisions.  Therefore, Ashton may proceed with its breach of contract claim against Jeffboat.

In reaching this conclusion, the Court is mindful that it should not dismiss a complaint under Fed .R. Civ. P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sanders v. Melvin*, 25 F.4th 475, 483 (7th Cir. 2022).  "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  At this stage, the Court is satisfied that Ashton has sufficiently pled its breach of contract claim against Jeffboat (Filing No. 8 at ¶ 34) and, thus, Defendants' Motion to dismiss Count I of Ashton's Amended Complaint is **denied.**

## C.   <u>Actual and Constructive Fraud (Counts III and IV)</u>

Defendants contend that Ashton failed to state a plausible claim for actual or constructive fraud (Filing No. 16-1 at 8-11; Filing No. 23 at 5-11).  The Court agrees.

The elements of actual fraud are as follows: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Kapoor v. Dybwad,* 49 N.E.3d 108, 121 (Ind. Ct. App. 2015).  To satisfy the heightened standard of Rule 9(b), a plaintiff must state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  A claim of actual fraud "may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not

executed." *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005).

Constructive fraud arises "when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud." *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998). The elements of constructive fraud are:

> (1) a duty existing by virtue of the relationship between the parties; (2) representations or omissions made in violation of that duty; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Wells*, 691 N.E.2d at 1250–1251.

Unlike actual fraud, intent to deceive is not an element of constructive fraud; rather, the law infers fraud from the relationship of the parties and the surrounding circumstances. *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010). Also, unlike actual fraud, claims of constructive fraud can be based on future promises. *See Paramo v. Edwards* 563 N.E.2d 595 598 (Ind. 1990). However, it is well-established that contractual agreements do not give rise to a fiduciary relationship creating a duty and do not provide a basis for a constructive fraud claim. *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) (citing *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000)).

## 1.   Actual Fraud (Count III)

As relevant here, Count III of Ashton's Amended Complaint realleges and incorporates by reference all of the allegation from the Amended Complaint and further alleges the following:

> 44. [Jeffboat] and ACBL knowingly supplied false information for the guidance of Ashton in connection with the parties' business relationship through, *inter alia*, the following:

(a) instructing Ashton that all issues with the Barges would be resolved in later 2019 while the Barges were at the Chicago Dry Docks;

(b) instructing Ashton that, while at the Chicago Dry Docks, they would use a Sherwin Williams product to coat certain areas of the Barges, but that such painting would be a temporary fix, not a permanent solution; and

(c) continuously instructing Ashton in 2019-2021 that they intended to remedy the ongoing issues with the Barges.

45. [Jeffboat] and ACBL made these statements and acted in this manner with the knowledge that Ashton would rely on their professional services, opinions, and guidance even though [Jeffboat] and ACBL knew such statements and actions were false or acted recklessly with respect to their falsity.

46. Ashton did, in fact, rely on the statements of [Jeffboat] and ACBL.

(Filing No. 8 at ¶¶ 44-46.)

Ashton's fraud claim fails because the alleged fraud, as outlined in paragraph 44 of Ashton's Amended Complaint, is based on representations of future conduct and, as alleged, broken promises.  *See Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1116 (Ind. Ct. App. 2008) (affirming the trial court's decision to dismiss a claim of actual fraud based on a broken promise).  Ashton contends that "Defendants' statements were not promises of future conduct or an expression of future intent, but were instead clear misrepresentations knowingly made with falsity for the purpose of inducing Ashton to delay action (and which did, in fact, delay Ashton)."

(Filing No. 21 at 14) (citing *Troth v. Warfield*, 495 F. Supp. 3d 729, 741 (N.D. Ind. 2020)).

*Troth*, however, is distinguishable from this case.  There, Mr. Troth was contemplating retirement and sought advice from an insurance agent who advised that "(1) Mr. Troth's military time would count towards his Social Security annuity, (2) Mr. Troth would be able to work without penalty after retiring, and (3) the plan did not require the Troths to carry life insurance policies." *Troth*, 495 F. Supp. 3d at 741.  The court found that the insurance agent's representations were "misstatements concerning features of [the agent's] plan and [were] not statements of future

12

consequence." *Id.* (noting that "[w]hile the statements at issue in this case are relevant to future occurrences, in the context of their explanation to the Troths, they were a part of a broader retirement plan that [the agent] was presenting to them and were not promises of future action." ).

Here, unlike *Troth* where the representations were made prior to the parties entering into any written agreement, it is without doubt that the statements in paragraph 44 of Ashton's Amended Complaint were made after the Barge Contact and Change Order were in existence. These statements in no way could be plausibly construed as being part of any broader explanation of the contractual rights. These statements are more akin to representations of future conduct and promises that, as alleged, were broken. Therefore, the Court concludes that Ashton failed to allege sufficient facts to support a finding that Defendants made representations of past or existing facts.

Also, relative to the timeframe of the misrepresentations, asserting that they occurred sometime between 2019 and 2021, is not sufficiently particular (Filing No. 8 at ¶ 44). While a specific date and time is not necessarily required, Ashton was required to narrow the timeframe and at least indicate when it is that each alleged misrepresentation occurred. *See, e.g., Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006) (finding that "sometime in late August or early September 2003 late at night—it was after midnight" sufficient under Rule 9(b)); *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Solutions LLC*, 2014 WL 6750042, at *4 (S.D. Ind. Dec. 1, 2014) ("periods of June 2003 and November 2006" satisfied Rule 9(b)); *Comentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1110 (N.D. Ind. 2011) ("[i]n or about February 2009" satisfied Rule 9(b)). The details about exactly when and how these representations were made were ostensibly known to Ashton when it filed the Amended Complaint.

Therefore, Count III of Ashton's Amended Complaint is **dismissed** as to both Defendants.

2.   **Constructive Fraud (Count IV)**

Defendants argue Ashton's constructive fraud claim fails because no special relationship existed between the parties (Filing No. 16-1 at 8-11).

For purposes of constructive fraud, a duty to speak arises in two primary ways: through a fiduciary relationship or through a buyer-seller relationship where one party "enjoy[s] a position of superiority over the other." *Harmon v. Fisher*, 56 N.E.3d 95, 99-100 (Ind. Ct. App. 2016); *Strong v. Jackson*, 777 N.E.2d 1141, 1147 (Ind. Ct. App. 2002). Here, the Court is concerned with the former as Ashton alleges that "[b]y virtue of the Barge Contract and their pecuniary interest therein, [Jeffboat] and ACBL owed a duty to Ashton." (Filing No. 8 at 12, ¶ 49.) However, the existence of a contract does not create a fiduciary relationship. *See Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118, 125–26 (Ind. Ct. App. 1992) (holding that arms-length, contractual arrangement does not create a fiduciary relationship and does not provide basis for constructive fraud claim). Ashton has not alleged that a fiduciary relationship exists between it and Jeffboat or it and ACBL beyond the purported contractual relationship. Ashton fails to allege any other independent grounds to support a finding of a fiduciary relationship between it and ACBL. Therefore, Count IV of Ashton's Amended Complaint should be **dismissed** as to both Defendants.

The existence of a fiduciary relationship is not the only basis for a claim of constructive fraud. Rather, Indiana courts have consistently held that a constructive fraud may also arise where the relationship between the parties is that of buyer and seller. *Kirkpatrick v. Reeves* (1889), 22 N.E. 139 (Ind. 1889); *Scott v. Bodor, Inc*. N.E.2d 313 (Ind. 1991) (where a seller makes unqualified statements to induce another to make a purchase, the buyer relies on those statements, and the seller has professed knowledge of the truth of the statements, a constructive fraud occurs). Here, however, Ashton has not advanced this argument. There exists no allegation in the Amended

Complaint that the parties were in a buyer-seller relationship, or that Defendants exercised any undue power over Ashton.  Likewise, Ashton has not alleged that the Defendants had superior knowledge and expertise about the alleged defects, or the steps needed to resolve them compared to Ashton, which is a marine transportation company, "specializ[ing] in transporting bulk cargo, dry cargo, and project cargo around the Great Lakes region of the United States." (Filing No. 16-1 at 13) *citing* Filing No. 8 at ¶ 8).)  *See Plymale v. Upright*, 419 N.E.2d 756, 768 (Ind. Ct. App. 1981)). For these reasons, Ashton is not an "inexperienced amateur" in the marine transportation business, but rather possesses the knowledge and skill necessary to dissuade the Court that Defendants were in somehow a more superior position to Ashton.

Therefore, Count IV of Ashton's Amended Complaint is **dismissed** as to both Defendants.

### D.     Negligent Misrepresentation (Count V)

Defendants contend that Ashton's negligent misrepresentation claim should be dismissed because "Defendants do not fall within the narrow class of persons to whom Indiana courts have expressly applied the limited tort of negligent misrepresentation." (Filing No. 16-1 at 12-13.)

Indiana has adopted the definition of "negligent misrepresentation" contained in the Restatement (Second) of Torts § 552(1), which provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*U.S. Bank N.A. v. Integrity Lane Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010).

Historically, Indiana courts recognized the tort of negligent representation narrowly, in the limited context of an employer-employee relationship.  *See Perfect Barrier, LLC v. WoodSmart Solution, Inc.*, 2008 WL 4449560 (N.D. Ind. Sept. 26, 2008) (citing *Ely v. York Division, Borg-*

*Warner*, 455 N.E.2d 623, 629-30 (Ind. Ct. App. 1983)) (stating that Indiana courts have declined to recognize the tort of negligent misrepresentation beyond the context of an employer-employee relationship.)  However, the tort recently has been expanded to include those whose profession includes the giving of opinions.  *See Troth v. Warfield*, 495 F. Supp. 3d 729, 743 (N.D. Ind. Oct. 20, 2020).

"The class of professionals who could be subject to a negligent misrepresentation claim includes, but is not limited to, brokers, attorneys, abstractors, and surveyors." *Id*.; *see e.g., Jeffrey v. Methodist Hosps.*, 956 N.E.2d 151, 153 (Ind. Ct. App. 2011) (denying motion to dismiss on negligent misrepresentation claim where the defendants were medical professionals who failed to provide information that a child was developmentally disabled to prospective adopted parents because the relationship could be characterized as "advisory" and because the hospital was "in the business of supplying information" regarding a child's health to prospective adoptive parents); *see also Essex v. Ryan*, 446 N.E.2d 368, 371 (Ind. Ct. App. 1983) ("[C]ertain professionals, by virtue of the nature of their business, make representations, render opinions, and give advice ... thus, brokers are liable in tort for failure to disclose all facts within their knowledge that may be material to the matter in which they are employed ... attorneys are liable for failure to exercise ordinary care, skill, and diligence ... and abstractors may be held accountable for failure to fulfill their duty to prepare an accurate abstract.").

Count V of Ashton's Amended Complaint, realleges and incorporates by reference, all the allegations from the Amended Complaint and further alleges the following:

55. By virtue of the Barge Contract and their pecuniary interest therein, [Jeffboat] and ACBL owed a duty to Ashton to exercise reasonable care in their communication of information and supply of services in connection therewith.

56. [Jeffboat] and ACBL negligently supplied false information for the guidance of Ashton in connection with the parties' business relationship through, *inter alia*, the following:

16

      a. Instructing Ashton that all issues with the Barges would be resolved in
         later 2019 while the Barges were at the Chicago Dry Docks;

      b. Instructing Ashton that, while at the Chicago Dry Docks, they would use
         a Sherwin Williams product to coat certain areas of the Barges, but that
         such painting would be a temporary fix, not a permanent solution; and

      c. Continuously instructing Ashton in 2019-2021 that they intended to
         remedy the ongoing issues with the Barges.

(Filing No. 8 at ¶¶ 55-56.)

Defendants are not in a professional advisory role that Indiana courts have held can support a claim for negligent misrepresentation. Ashton has not alleged that Defendants are a broker, attorney, abstractor, or surveyor (Filing No. 8). Nor has it alleged an employee-employer relationship between the parties. *Id*. Ashton primarily argues that because "Indiana law has not rejected a claim for negligent misrepresentation in connection with the facts present in this action, Defendants' Motion should be denied as to this claim." (Filing No. 21 at 19.) However, this argument is circular. Ashton fails to cite any Indiana Supreme Court case indicating that they have ever recognized the tort of negligent representation in the context of the current dispute. Unlike an attorney, broker, or a medical professional, neither Defendant is alleged to be in the business of providing advice. Defendants may very well represent that they will meet a certain level of care in the performance of its contractual obligations, or that they will exercise a certain level of competence, but that does not create the type of trusting, advisory relationship necessary for a claim of negligent misrepresentation.

Federal courts interpreting state law must proceed cautiously in the absence of state supreme court guidance, for "federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Wagner-Meinert Eng'g, LLC v. TJW Indus., Inc.*, 587 F. Supp. 3d 744, 749 (N.D. Ind. 2022)

(quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)).  Because Ashton has failed to show that Indiana law currently recognizes the alleged special relationship within the confines of stating a viable negligent misrepresentation claim, the Court declines to apply it here.

Therefore, Count V of Ashton's Amended Complaint is **dismissed** as to both Defendants.

### E.    Unjust Enrichment (Count VI)

Defendants contend that Ashton's claim for unjust enrichment should be dismissed because an express contract governs the parties' dispute (Filing No. 23 at 15-17).

Unjust enrichment is a quasi-contract claim, which "'is a legal fiction invented by the common-law courts in order to permit a recovery ... where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise.'"  *Landeen v. PhoneBILLit, Inc.*, 519 F.Supp.2d 844, 865 (S.D. Ind. 2007) (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)).  When a valid and enforceable contract exists, no claim for unjust enrichment may be maintained.  *Wal–Mart Stores, Inc. v. S.C. Nestel, Inc.*, 2009 WL 838586, at * 10 (S.D. Ind. Mar. 30, 2009) ("an unjust enrichment action arises only where no contract governs the relationship"); *DiMizio v. Romo*, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001) (same).  "A party can't pursue a quasi-contract claim simply because its contract claim fails, without alternatively alleging that there was either no contract or the contract at issue was unenforceable."  *Desert Buy Palm Springs, Inc. v. DirectBuy, Inc.*, 2012 WL 2130558, at *4 (N.D. Ind. June 12, 2012).  "Once a valid contract is found to exist, quasi-contractual relief is no longer available." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

Here, Count VI of Ashton's Amended Complaint alleges that,

61.     [Jeffboat] and ACBL have benefitted and been unjustly enriched to the detriment of Ashton in that [Jeffboat] and ACBL received the benefit of numerous payments from Ashton *under the terms of the Barge Contract* without having to provide any product or service of comparable value.

62.     It would be inequitable to permit [Jeffboat] and ACBL to retain the benefits they received as a result of such payments by Ashton, because [Jeffboat] and ACBL misled Ashton into making such payments and Ashton did not receive the complete Barges free of defects, or any other product or service of comparable value from [Jeffboat] and ACB.

([Filing No. 8 at 14](#)) (emphasis added).

Ashton argues that it appropriately pled its unjust enrichment claim because it "alleged that Defendants are bound under the obligations set forth in the Barge Contract and Change Order, the extent of those obligations and payments made to Defendants by Ashton . . . could, after, some discovery, be found to have occurred at least in part outside of the contract at issue." ([Filing No. 21 at 23](#).) However, Ashton does not, and perhaps cannot, argue that there was no contract between it and Jeffboat or that the Barge Contract and Change Order are unenforceable. *See CoMentis*, 765 F.Supp.2d at 1103 ("*CoMentis* may not seek unjust enrichment just in case the contract does not afford it the relief it seeks; a valid contract still governs the parties' rights with respect to the subject matter at issue."). In *CoMentis*, District Court Judge Philip P. Simon found that, "a claim for breach of an implied contract may not proceed in the alternative where the parties have an express contract that covers the same subject matter." 765 F. Supp. 2d at 1098. Several years later, in August 2020, Judge Simon decided *Cintas Corp. v. Jupiter Aluminum Corp.*, where he concluded that the clincher in *CoMentis* "was the fact that the parties were "unquestionably bound by an enforceable express contract governing the parties' relationship." 2020 WL 4584298, at *1-2 (N.D. Ind. Aug. 10, 2020).

Ashton's reliance on *Sunny Handicraft* is misplaced. In *Sunny Handicraft*, the court declined to dismiss an alternative claim for unjust enrichment, reasoning that "although [the count

for unjust enrichment] contains allegations that Sunny Handicraft agreed to pay for an artwork expense and failed to provide agreed-upon shipping documents, Envision does not allege anywhere within [the count] that the parties were bound by an express contract."  2015 WL 231108, at *7 (N.D. Ill. Jan. 16, 2015).  Unlike *Sunny Handicraft*, Count VI contains allegations of a binding and enforceable agreement between, at least, Ashton and Jeffboat.  Count VI of Ashton's Amended Complaint refers to, and incorporates by reference, other allegations referring to the "Barge Contract" between the parties, which has been the downfall of complaints in other cases ([Filing No. 8 at 14](#)).  *See, e.g., Cole–Haddon, Ltd. V. Drew Philips Corp.*, 454 F.Supp.2d 772, 777 (N.D. Ill. 2006) (plaintiff did not properly plead quasi-contract claim in the alternative because the claim reasserted all allegations previously stated, including those alleging the existence of a contract); *Team Impressions, Inc. v. Chromas Technologies Canada, Inc.*, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003) (unjust enrichment claim not properly pled in alternative because it was expressly premised on defendant's failure to fulfill contractual obligations).

The law is clear that Ashton cannot recover under both a breach of contract theory and an unjust enrichment theory.  *See Shaw v. Hyatt, Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006).  Although Ashton may plead in the alternative in most circumstances, Ashton and Jeffboat are unquestionably bound by the Barge Contact and Change Order.  Whether Ashton provided payments to Jeffboat outside of the parties' contractual term in no way alters Ashton's ability to remedy any wrong arising from the parties' contractual relationship. Therefore, Defendants' Motion to Dismiss Count VI of Ashton's Amended Complaint as to Jeffboat must be **granted**.

ACBL argues that the unjust enrichment claims against it should be dismissed also because Ashton has not alleged an independent basis for liability ([Filing No. 23 at 17](#)).  Unjust enrichment is an appropriate claim when "no contract actually exists but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise."  *DiMizio*, 756 N.E.2d at

1024–1025.  A claim of unjust enrichment requires a claimant to allege that a measurable benefit has been conferred on the defendant "under such circumstances that the defendant's retention of the benefit without payment would be unjust."  *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009).  Here, after Jeffboat closed its operations, "the former Jeffboat employees dealing with Ashton became employees of ACBL acting as Jeffboat's agents to fulfill Jeffboat's obligations under the parties' agreements…." (Filing No. 16-1 at 15.)  Although Ashton contends that ACBL is not a named party to the Barge Contract or Change Order, Ashton generally contends that "[Jeffboat] and ACBL received the benefit of numerous payments from Ashton *under the terms of the Barge Contract* without having to provide any product or service of comparable value."  (Filing No. 8 at 14 ¶ 61) (emphasis added).  While Ashton's Amended Complaint fails to clearly allege that any "consideration that Jeffboat derived from the [Barge] Contract [and] Change Order flowed to ACBL," (Filing No. 23 at 17), the Court is inclined to allow Ashton's unjust enrichment claim against ACBL to proceed beyond the motion to dismiss stage, especially since Ashton conceded that ACBL was not a party to the Barge Contract or Change Order.  Whether ACBL derived any benefit from Ashton will become clear after discovery.  While the Court believes this claim will ultimately fail, at this stage, the Court will allow Ashton's unjust enrichment claim against ACBL to proceed.

Defendants' Motion to Dismiss Count VI of Ashton's Amended Complaint is **granted in part and denied in part**.  Ashton's unjust enrichment claim against Jeffboat is dismissed but Ashton's unjust enrichment claim against ACBL will proceed to the next phase of litigation.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Partial Dismissal of Amended Complaint (Filing No. 16).  Counts III, IV, and V are **dismissed** as to both Defendants, and Count VI is **dismissed** as to only Defendant

Jeffboat. The claims that shall proceed are Count I: breach of contract; Count II: breach of express warranties and Count VI: unjust enrichment as to only Defendant American Commercial Barge Line LLC.

      **SO ORDERED**.

      Date:   9/18/2023

                                                        Hon. Tanya Walton Pratt, Chief Judge
                                                       United States District Court
                                                       Southern District of Indiana

DISTRIBUTION:

Andrew Hagerman
STOLL KEENON OGDEN PLLC
andrew.hagerman@skofirm.com

Kevin Alexander Imhof
STOLL KEENON OGDEN PLLC
kevin.imhof@skofirm.com

Mark T. Hurst
STOLL KEENON OGDEN PLLC
mark.hurst@skofirm.com

Donald J. Kelly
WYATT TARRANT & COMBS
dkelly@wyattfirm.com

Matthew Lewis Bunnell
WYATT TARRANT & COMBS, LLP
mbunnell@wyattfirm.com